TOWN OF DOVER *vs.* MASSACHUSETTS WATER RESOURCES
AUTHORITY.

Norfolk. April 7, 1992. - February 12, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Sewer. Statute,* Construction. *Municipal Corporations,* Sewers. *Massachusetts Water Resources Authority.*

In an action seeking a declaratory judgment, the judge correctly construed
the provisions of § 8 (*e*) of St. 1984, c. 372, the Massachusetts Water
Resources Authority (MWRA) Act, to conclude that the MWRA was
not required to obtain Dover town meeting approval of a sewer exten-
sion project to be constructed in Dover but which did not entail the
provision of new sewer services to the town. [278-280]

Statute 1986, c. 624, §§ 1-5, authorizing the development by the Division
of Capital Planning and Operations of certain property in the town of
Dover for specified purposes and designating certain rights of way for
access to the property, did not preclude the Massachusetts Water Re-
sources Authority from designating another route of access to the prop-
erty for the purpose of building a sewer project on the site pursuant to
its mandate under St. 1984, c. 372. [281-282]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 22, 1990.

The case was heard by *James P. Lynch, Jr.,* J., on motions
for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Edward F. Lawson* for the plaintiff.

*Steven H. Goldberg* (*Kathleen A. Scruton* with him) for
the defendant.

O'CONNOR, J. In its amended complaint, the plaintiff,
town of Dover (Dover), requests a judgment declaring that
the defendant, Massachusetts Water Resources Authority
(MWRA), may not construct the Framingham Extension

Relief Sewer (Framingham Extension) across land in Dover called "Elm Bank" without authorization by two-thirds votes of the House of Representatives and Senate pursuant to art. 97 of the Massachusetts Constitution. Dover also seeks declarations that (1) the MWRA may not use Buttercup Lane and private property lying between the end of Buttercup Lane and Elm Bank as an access to Elm Bank for the purpose of constructing the Framingham Extension, and (2) construction of the Framingham Extension is impermissible unless it has Dover town meeting approval, which it does not have. Both parties moved for summary judgment in the Superior Court, there being no genuine issues of material fact. A judge declared that art. 97 "requires the MWRA to obtain legislative approval to acquire a sewer easement in Elm Bank." The MWRA has not appealed that ruling, and the parties are bound by it. The judge also declared that "St. 1984, c. 372 § 8(e) does not require the MWRA to obtain Dover town meeting approval for sewer construction not resulting in new sewer service to Dover" and that "St. 1986, c. 624, § 5 does not prohibit the MWRA from using Buttercup Lane for access to Elm Bank for construction purposes." Dover appeals from the judgment insofar as it declares that town meeting approval is not required by St. 1984, c. 372, § 8 (e), and that St. 1986, c. 624, § 5, does not preclude the MWRA from using Buttercup Lane for access to Elm Bank. We transferred the appeal to this court on our own motion, and we now affirm the declaratory judgment entered in the Superior Court.

The judge filed a comprehensive memorandum of decision setting forth the material facts, as to which there is no dispute, and the judge's reasoning that led to his conclusions. In our view, the judge arrived at the right result for the right reasons.

We take from the memorandum of decision the following material facts. "The MWRA was created in 1984 to 'operate, regulate, finance, and improve the delivery of water and sewage collection, disposal and treatment systems and services', duties previously assumed by the Metropolitan Dis-

trict Commission (MDC), St. 1984, c. 372, § 1 (c). The MWRA is currently undertaking a major sewer rehabilitation project, originally planned by the MDC, which is intended to alleviate problems caused by existing, overburdened sewer lines. As part of this effort, the MWRA proposes to construct two 'relief' sewer lines, the Wellesley Extension and the Framingham Extension.

"2. The Elm Bank property was acquired by the Commonwealth in 1972. The property is located in the northern part of the town of Dover and is essentially a peninsula surrounded on three sides by the Charles River. The property consists of approximately 180 acres and includes a mansion, athletic fields, and overgrown gardens. Beneath the property is an aquifer which will become a significant source of water for the town[s] of Dover, Natick, Wellesley and Needham.

"3. The proposed Framingham Extension would cross the Charles River from Natick on to Elm Bank on the western side of the property. It would then cut across the site for approximately 4600 feet and connect with the Wellesley Extension on the Dover side of the Charles River on the eastern side of Elm Bank.

"4. Elm Bank is administered pursuant to Chapter 624 of the Acts of 1986 (Chapter 624). Under that legislation, the Division of Capital Planning and Operations (DCPO) [of the Executive Office for Administration and Finance, G. L. c. 7, § 39B (1990 ed.)] is directed to develop a Master Plan for Elm Bank in accordance with the 'Elm Bank Development Guidelines'. Chapter 624, § 1. DCPO published a Draft EIR [environmental impact report] for the master plan on August 13, 1990. The Elm Bank legislation also provides for the transfer of control of a major portion of the property to the MDC and provides the towns of Dover, Natick, Wellesley and Needham with an opportunity to develop the aquifer beneath the property. Chapter 624, §§ 2 and 3.

"5. Dover, which is not a member of the MWRA and is not served by it, has consistently voiced its concerns regarding the proposed construction of the Framingham Extension across Elm Bank. Dover believes that the extension will have

unacceptable impacts upon its residents and groundwater resources within the town.

"6. Historically, the primary means of access to Elm Bank has been from Route 16 in Wellesley. The principal access road to the property crosses the Charles from Wellesley over Cheney Bridge. Section 5 of Chapter 624 designates Cheney Bridge as the 'primary access' to the property. However, the bridge is currently in a state of disrepair and its use is generally limited to passenger vehicles and lightweight trucks.

"7. Access to Elm Bank is also available from the town of Dover along Turtle Lane. Although Section 5 of Chapter 624 identifies Turtle Lane, a private way, as available for temporary access for construction of the Framingham Extension, the MWRA has rejected use of Turtle Lane on environmental grounds.

"8. Although it is not identified in Chapter 624, the MWRA has announced that it plans to gain access to Elm Bank through the extension of Buttercup Lane, a public way in the town of Dover."[1]

First, we discuss the question whether § 8 (*e*) of St. 1984, c. 372, the Massachusetts Water Resources Authority Act (see § 1), provides that Dover town meeting approval is a prerequisite to the MWRA's authority to construct the Framingham Extension across Elm Bank. An understanding of the relevant language in § 8 (*e*) is served by a review of §§ 8 (*c*) and (*d*). Section 8 (*c*) lists the communities that, as members of the MWRA, are entitled to sewer services, and provides that the MWRA may provide sewer services to non-members under specified conditions. Section 8 (*d*) deals with the MWRA's provision of water services to listed communities and, like § 8 (*c*) in reference to sewer services, § 8 (*d*) provides that water services may be provided by MWRA to unlisted communities if certain conditions are met. Then, § 8

---

[1]At the time the judgment was entered, Buttercup Lane was a public way. According to Dover's brief filed in this court, "[a]t a town meeting on September 30, 1991, Dover voted to return Buttercup Lane to its former status as a private way." Whether Buttercup Lane is public or private does not affect our decision.

(*e*) provides, among other things, that "[n]othing contained in paragraphs (*c*) and (*d*) shall require a city or town not presently served by the [MWRA] to accept an extension of the [MWRA's] sewer and water works without a majority vote by the city council if a city or a majority vote of town meeting of a town."

The question is whether § 8 (*e*) means that a nonmember town, like Dover, may refuse to allow the construction of sewer lines within its borders if those lines do not provide service to the town. The MWRA argues that §§ 8 (*c*) and (*d*) deal with the provision of services, and therefore § 8 (*e*) does the same. Since the Framingham Extension will not provide new service to Dover, the MWRA argues, town approval is not necessary. Dover, on the other hand, says that the plain meaning of the word "works," appearing in § 8 (*e*) is "physical structures" without reference to who is serviced thereby. Because the Framingham Extension involves an "extension of . . . sewer . . . works" in a nonmember town, Dover argues, Dover's approval by town meeting vote is a prerequisite.

In arriving at his conclusion that a nonmember town lacks authority to disallow construction within its borders of sewer lines that would not provide sewer service to that town, the judge reasoned, correctly we think, that that result is dictated by § 8 (*e*) when § 8 (*e*) is viewed in the context "of the whole system of which it is but a part, and in the light of the common law and previous statutes" on the same subject. *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 115 (1973), quoting *Armburg* v. *Boston & Maine R.R.*, 276 Mass. 418, 426 (1931). While the word, "works," appearing in § 8 (*e*), standing alone, does not suggest that it refers only to sewer lines that provide service to the town in which the lines are located, previous statutes and the obvious legislative purpose in enacting the MWRA statute reveal that that was the legislative intent. As the judge observed, "[a] review of legislation antecedent to the MWRA's enabling statute reveals that towns historically had the power to 'accept' [or reject sewer lines] only when they were to receive sewer service. For ex-

ample, the towns of Wellesley and Framingham were admitted as members of the Metropolitan Sewerage District by c. 343 of the Acts of 1914 and c. 527 of the Acts of 195[1], respectively. In each Act, the financial obligations of the newly admitted town were outlined, and the town was given the power to accept the new sewer service by a majority vote at a town meeting. In each case, the legislature authorized sewer construction through several towns, including the town of Dover, but made no provision for acceptance by towns not receiving service. Thus, the power of acceptance seems to have been tied traditionally to the provision of sewer service which, in turn, was linked to the undertaking of financial obligations."

Not only do the earlier statutes suggest that, in enacting § 8 (e), the legislative focus was on a nonmember town's right to accept or reject sewer and water service, as distinguished from a similar right with respect to sewer lines providing service only to other communities, but also the same focus is revealed when one considers the manifest legislative over-all purpose in enacting the MWRA Act. The Legislature created the MWRA to carry out an "essential public purpose," namely, "[p]roviding . . . sewage collection, treatment and disposal services to areas of the commonwealth made up of the cities and towns now served by the [MDC]. . . ." St. 1984, c. 372, § 1 (a). Section 1 (b) further specifies that "[i]t is in the best interests of the commonwealth and its citizens to create an authority to achieve the following goals, purposes and objectives: . . . (ii) repair, replacement, rehabilitation, modernization and extension of the delivery of water sewage collection, disposal and treatment systems for the service areas of the Authority . . . ." Section 1 (c) identifies "important needs" of the Commonwealth as including "fostering . . . improvement of . . . sewage collection, disposal and treatment services to which end an authority should be established and vested with extensive operating, financing and regulatory powers to provide appropriate means for addressing these needs." Consistent with these identified needs and stated goals, the Legislature con-

ferred on the MWRA broad powers to accomplish the stat-
ute's mandate, including, but not limited to, the power to
adopt and enforce regulations, to maintain, extend, and im-
prove sewer and waterworks systems, to take property by em-
inent domain, and to enter into contracts. St. 1984, c. 372, §
6, § 9 (a).

Given this statutory context, it is unlikely that the Legisla-
ture intended, in § 8 (e), to give a nonmember community a
veto over the MWRA's sewer projects not involving the ex-
tension of sewer service to that nonmember community. Such
a construction of "extension of . . . works" in § 8 (e) would
defeat the purposes of the enabling act and create an illogi-
cal, unworkable result, contrary to established principles of
statutory interpretation. See *Massachusetts Hosp. Ass'n* v.
*Department of Medical Sec.*, 412 Mass. 340, 346 (1992)
("We interpret the words used in a statute with regard to
both their literal meaning and the purpose and history of the
statute within which they appear"). Such a construction also
would be contrary to the mandate of § 26 (c) of the MWRA
Act that "[a]ll general and special laws relating to water and
sewer services of local bodies shall be interpreted and con-
strued liberally so as to effectuate the purposes and provi-
sions of this act and the objectives of the Authority
[MWRA]."

In addition to Dover's arguments discussed above, we have
considered its other arguments bearing on the proper con-
struction of § 8 (e). These include arguments based on the
general appropriateness of judicial deference to an adminis-
trative agency's prior interpretations of its enabling legisla-
tion, and on the language of § 8 (p) of c. 372, inserted by St.
1987, c. 770, § 15. We are not persuaded by those argu-
ments. We conclude, as did the judge below, that St. 1984, c.
372, § 8 (e), "does not require the MWRA to obtain Dover
town meeting approval, as the Framingham Extension pro-
ject does not entail the provision of new sewer services to the
town of Dover."

We turn to the second issue raised by this appeal, that is,
whether the MWRA may use Buttercup Lane and private

property between it and Elm Bank for the purpose of constructing the Framingham Extension. Dover argues that St. 1986, c. 624, § 5, implicitly prohibits the MWRA's use of Buttercup Lane and an extension of Buttercup Lane as a means of temporary access to Elm Bank for sewer line construction purposes. Statute 1986, c. 624, §§ 1-4, authorize the development of Elm Bank by DCPO for "aquifer and environmental protection, bridge repair or reconstruction, infrastructure development, . . . landscape and historic preservation," "public park and water supply protection," water supply projects such as wells and water lines, and affordable housing. Section 5 provides: "The deputy commissioner of [DCPO] is . . . authorized to retain or grant rights of way on easements across property described in sections one to five, inclusive, of this act for access, utilities installation and maintenance, and construction purposes. In the master plan and disposition agreements, the entrance from Washington Street in the town of Wellesley shall be designated as the primary access to the property and use of Turtle Lane, a private way, and the use of a private driveway shall be restricted to emergency access, except that a temporary easement through Turtle Lane shall be authorized for construction of the Framingham extension relief sewer."

Dover argues that, by explicitly authorizing access to Elm Bank via "the entrance from Washington Street" (via Cheney Bridge) and Turtle Lane, § 5 implicitly prohibits the MWRA's use of Buttercup Lane and an extension thereof as a means of temporary access. The judge did not agree. We also do not agree. The Legislature enacted St. 1986, c. 624, to authorize the DCPO to develop Elm Bank for specified purposes. To serve those purposes, the statute provides for specific primary and emergency access routes. However, nothing in § 5 suggests a legislative intent to bar temporary access via Buttercup Lane by the MWRA to construct sewer lines. We do not read the provision authorizing a temporary easement through Turtle Lane for sewer construction as an expression of legislative intent to nullify the MWRA's eminent domain power to take temporary easements in other lo-

cations in order to provide access for sewer construction in Elm Bank. To extend the meaning of § 5 beyond its express terms by implying a prohibition of the use of Buttercup Lane and its extension would result in a statute of limited scope, St. 1986, c. 624, governing a small parcel of land in one community, to override and frustrate a much broader statutory scheme, set forth in the MWRA Act, advancing essential public services affecting many communities. If the Legislature had intended such a result, we think it would have explicitly said so.

*Judgment affirmed.*