Garry V. Inge, J.

INTRODUCTION

This case arises from a real estate transaction in which the plaintiff, Carolyn Mercuri (“Mrs. Mercuri”), purchased a single-family home located at 176 McCarthy Way, Tewksbury, Massachusetts.[2] Mrs. Mercuri asserts claims for breach of contract, legal malpractice, negligent infliction of emotional distress, intentional infliction of emotional distress, and violations of G.L.c. 93A (“Chapter 93A”) against the defendants, Michael J. Newhouse (“Newhouse”) and Paul D. Lambert (“Lambert”) (collectively the “Defendants”), for improperly certifying title to the property she purchased. The matter is currently before the court on the Defendants’ Motion for Summary Judgment and Mrs. Mercuri’s Cross Motion for Partial Summary Judgment. For the reasons .set forth below, Defendants’ motion is DENIED in part and ALLOWED in part; and Mrs. Mercuri’s cross motion is DENIED.

BACKGROUND

The undisputed facts are as follows.
On June 11, 1986, Armando DeCarolis, Jr. (“DeC-arolis”), Trustee of the Lynne Realty Trust, sold a parcel of land known as 176 McCarthy Way, Tewksbury, Massachusetts (“176 McCarthy Way”) to Anthony M. and Sandra J. Adinolfi (the “Adinolfis”). 176 McCarthy Way consists of 11,250 square feet and is comprised of lots 371, 372, 373, 374, and 375 on a plan entitled “Oakland Park Plan ‘B’ ” (the “Oakland Plan”). Brackett Street abuts and runs parallel with 176 McCarthy Way’s northern boundary for approximately ninety feet. According to the deed transferring 176 McCarthy Way to the Adinolfis, DeCarolis did not reserve any title, interest, or legal rights in Brackett Street.[3]
Approximately two years later, on June 6, 1988, DeCarolis sold a parcel of land known as 184 McCarthy Way, Tewksbury, Massachusetts (“184 McCarthy Way”) to George H. Barnes and Eve M. Barnes (the “Barneses”). This parcel consists of lots 291, 292, 293, 294, 295, 376, 377, 378, and 379 of the Oakland Plan. Again, according to the deed transferring 184 McCarthy Way to the Barneses, DeCarolis did not reserve any title, interest, or legal rights in Brackett Street. Subsequently, in March 1996, John and Toni Calendrello (the “Calendrellos”) purchased 184 McCarthy Way from the Barneses.
Following these transactions, on June 19, 2001, despite not reserving any right or interest in Brackett Street during either of the above sales, DeCarolis transferred ownership of Brackett Street to the then owners of 176 McCarthy Way, Dana and Michele Bates (the “Bateses”). The driveway for 176 McCarthy Way sits on Brackett Street.
On March 3, 2002, Mrs. Mercuri contracted to purchase the “lane and buildings” known and numbered as 176 McCarthy Way from the Bateses. According to Mrs. Mercuri, she and Mr. Mercuri hired Newhouse’s law firm to negotiate their purchase of 176 McCarthy Way and to represent them at the closing.[4] Pursuant to the terms of the purchase and sales agreement, the Bateses agreed to convey to Mrs. Mercuri “all their right, title and interest in the portion of the roadway known as Brackett Street . . . but make[] no representation as to whether they have good and clear record and marketable title hereto.” Mrs. Mercuri alleges this language raised concerns about the ownership of Brackett Street and thus, throughout the purchasing process she and Mr. Mercuri repeatedly asked Newhouse and/or Lambert whether ownership of Brackett Street would be included in their purchase of 176 McCarthy Way. In response to these inquiries, Mrs. Mercuri claims Newhouse and/or Lambert stated, “this is your land,” “this is a non-issue,” *536 the “neighbor has no right,” and “it’s your land; don’t worry about it.”
The closing for the purpose of 176 McCarthy Way occurred on May 21, 2002. On this same date, the deed was recorded in the Middlesex North Registry of Deeds. Newhouse was not present at the closing, but Lambert attended. Prior to executing the mortgage note, Mrs. Mercuri signed a disclosure notice pursuant to G.L.c. 184, §17B, which provides “[t]he responsibility of the attorney for the Lender is to protect the interest of the Lender. You, the Borrower, may at your own expense, engage an attorney of your own selection to represent your interest in this transaction.”
At the closing, Mrs. Mercuri was shown a plot plan prepared for the lender, Countrywide Home Loans (“Countrywide”), which delineated the boundaries of 176 McCarthy Way. This plot plan does not specifically identify a driveway, but it does depict Brackett Street, which was then being used as a driveway for 176 McCarthy Way. At the closing, Lambert presented a document prepared by Newhouse, certifying Mrs. Mercuri held “good and sufficient record title to the mortgaged premises” located at “176 McCarthy Way” (the “Title Certification”). The mortgage note defines the mortgaged premises as “the land in Tewksbury, with the buildings situated on the westerly side of Florida Road, and shown as lots 371, 372, 373, 374, and 375 on a plan of land entitled, Oakland Park Plan ”B" dated April 23, 1907 . . . containing according to said plan 11,250 square feet of land . . ." Neither Newhouse nor Lambert provided a separate title certification for Brackett Street. In addition, the Title Certification did not include any exclusions specifically exempting Brackett Street from the title search completed for 176 McCarthy Way.
Within days of the closing, Mr. Calendrello approached Mrs. Mercuri and/or Mr. Mercuri and informed them he owned the portion of Brackett Street on which their driveway was located. More specifically, Mr. Calendrello stated he could move his fence or make them move their driveway any time he wished because the driveway encroached on his property. Based on the Defendants’ previous assertions, during the purchase negotiations and at the closing, that Brackett Street was included with the purchase of 176 McCarthy Way, Mrs. Mercuri ignored these claims as the declarations of a disgruntled neighbor.
Disagreements regarding the ownership of Brackett Street continued until June 2003, when the Calendrellos filed a complaint in the Middlesex Superior Court. The Calendrellos, relying on G.L.c. 183, §58, claimed title to Brackett Street’s centerline and requested injunctive relief preventing Mrs. Mercuri and Mr. Mercuri from passing over their portion of the way, asserting ownership of Brackett Street. After receiving notice of this filing, Mrs. Mercuri and Mr. Mercuri returned to Newhouse’s office for an explanation and the Defendants, for the first time, admitted there may have been an error, acknowledging it was possible Mrs. Mercuri did not own Brackett Street. After two years of litigation, by order dated June 24, 2005, the Middlesex Superior Court (Fishman, J.) declared the Calandrellos and Mrs. Mercuri “each own the fee on their respective side of Brackett Street’s centerline to that centerline.” [19 Mass. L. Rptr. 585.] The court also ruled Mrs. Mercuri was not required to move her driveway. Nevertheless, according to Mrs. Mercuri, she spent approximately $30,000 in legal fees defending against the Callendrellos’ claim.
On December 16, 2005, Mrs. Mercuri filed the Complaint in the current matter. Thereafter, on January 23, 2006, she filed an Amended Complaint, alleging breach of contract (Count I), legal malpractice (Count II), intentional and negligent infliction of emotional distress (Count III), and violations of Chapter 93A (Count IV) against Newhouse and Lambert for failing to properly certify title to 176 McCarthy Way, i.e., failing to conduct a title search for Brackett Street. On July 7, 2009, Newhouse and Lambert filed a joint Motion for Summary Judgment as to all counts. In response, Mrs. Mercuri filed an Opposition and Cross Motion for Partial Summary Judgment, requesting the court: (1) declare an attorney-client relationship existed between herself and the Defendants; (2) dismiss the Defendants’ statute of limitations argument; and (3) enter judgment as to liability on Count I and Count IV. These are the matters currently before the court.[5]

DISCUSSION I. Standard of Review

Summary judgment is appropriate when the record reveals “there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the nonmoving party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). Once the moving party demonstrates the absence of a triable issue, the non-moving party must set forth specific facts establishing the existence of a genuine dispute as to a material fact. Correllas v. Viveiros, 410 Mass. 314, 317 (1991). The non-moving party cannot defeat the motion for summary judgment by resting on its pleadings. Id. The court views the evidence in the light most favorable to the non-moving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).

*537
II. Breach of Contract

Count I of the Amended Complaint alleges that the Defendants’ failure to include Brackett Street in their title certification search “constitutes] a breach of the title certification contract.[6] In support of their Motion for Summary Judgment, the Defendants contend they properly certified title for the premises they were hired to certify title to, i.e., 176 McCarthy Way, which did not include Brackett Street. In response, Mrs. Mercuri argues that, pursuant to G.L.c. 183, §58, the Defendants should have included Brackett Street in any title certification search for 176 McCarthy Way.
General Laws c. 93, §70 provides, in relevant part, “[i]n connection with the granting of any loan or credit to be secured by a purchase money first mortgage on real estate improved with a dwelling designed to be occupied by not more than four families and occupied or to be occupied in whole or in part by the mortgagor, an attorney acting for or on behalf of the mortgagee shall render a certification of title to the mortgaged premises to the mortgagor and to the mortgagee.” Meanwhile, G.L.c. 183, §58 states, in pertinent part, “[e]veiy instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless ... the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line.”
In interpreting these provisions, the court must give the statutory language its plain and ordinary meaning. Sullivan v. Brookline, 435 Mass. 353, 360 (2001). The words used in a statute are interpreted with regard to both their literal meaning and the purpose and history of the statute within which they appear. Dover v. Massachusetts Water Res. Auth., 414 Mass. 274, 280 (1993), citing Massachusetts Hosp. Ass’n v. Department of Med. Sec., 412 Mass. 340, 346 (1992). Where the language of the statute is clear and unambiguous, “it is the sole function of the courts to enforce it according to its terms.” D’Avella v. McGonigle, 429 Mass. 820, 823-24 (1999), citing Boston Neighborhood Taxi Ass’n v. Department of Pub. Utils., 410 Mass. 686, 690 (1991).
General Laws c. 183, §58 was enacted “to meet a situation where a grantor has conveyed away all of his land abutting a way or stream, but has unknowingly failed to convey any interest he may have in land under the way or stream, thus apparently retaining his ownership of a strip of the way or stream.” Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 803 (2003) (internal citations omitted). “Its effect was to quiet title to sundry narrow strips of land that formed the boundaries of other tracts, by establishing an authoritative rule of construction for all instruments passing title to real estate abutting a way.” Id. (internal citations and quotations omitted). Essentially, this provision establishes a statutory presumption in favor of vesting title of a way in the abutter unless the instrument of conveyance evidences a different intent. See id.
Though there is limited information regarding the legislative history behind the adoption of G.L.c 93, §70, other courts discussing the provision have narrowly construed the certification duty imposed on the lender’s attorney. For example, in Kramer-Rutter v. Cinella, MICV1996-0389F, slip op. at *2 (Mass.Super. May 1997) (Smith, J.) [7 Mass. L. Rptr. 85], Cinella, at the closing and acting as the bank’s attorney, executed a document certifying to both the bank and KramerRutter that she had good and sufficient title. Id. at *1. When Kramer-Rutter later attempted to sell her property a title defect was discovered. Id. She argued that G.L.c. 93, §70 required Cinella to perform a competent title inspection and that he breached that duty by failing to uncover a title defect. Id. at *2. The court rejected Kramer-Rutter’s assertion finding there was no competency requirement. Id. According to the court, because there was no attorney-client relationship between the parties, Cinella owed Kramer-Rutter no duty other than to simply provide the title certification. Id.
Similarly, in Houston v. Greenwald, 2000 WL 1273373 at *1 (Mass.Super. 2000) (Hillman, J.) [11 Mass. L. Rptr. 647], the Houstons asserted a claim for violation of G.L.c. 93, §70 against the defendant law firm, Greenwald, Greenwald and Powers (“Greenwald”), for rendering an incorrect certificate of title in connection with their purchase of a single-family home. Greenwald represented the mortgage lender. Id. The certificate of title indicated the Houstons had “good, clear, and marketable title” to their property. Id. Several years later, however, the Houstons discovered the deed and the mortgage described the wrong property, which had been subdivided and conveyed by prior deeds. Id. As a result of this error, the Houstons did not own the land upon which their house sat. Id. at *2. The Houstons claimed Greenwald owed them a duly under G.L.c. 93, §70 to properly certify title and that the firm violated this duty because the title certification listed the wrong property. Id. at *2.3. The court determined Greenwald had not violated the statute “because the mortgage and certification of title described the same premises, thereby satisfying the statutory requirement that the defendant certify title to the mortgaged premises.” Id. at *3.
Based on the unambiguous statutory language and the narrow interpretations other coúrts have applied to G.L.c. 93, §70, the Defendant’s only obligation was to “render a certification of title to the mortgaged premises.” The statute imposes no other duty. Here, the mortgage note identifies the mortgaged premises as “(t]he land in said Tewksbury, with the buildings thereon situated on the westerly side of Florida Road, and shown as lots 371, 372, 373, 374, and 375 on a plan of land entitled, ‘Oakland Park, Plan ”B’ “ dated *538 April 23, 1907 . . . [and] [containing according to said plan 11,250 square feet of land, more or less.” Brackett Street was not included in the mortgage note’s description of the “mortgaged premises.” Thus, the Defendants had no obligation, pursuant to G.L.c. 93, §70, to certify title to Brackett Street; they fully complied with their statutory obligations by certifying title to “176 McCarthy Way.” See Kramer-Rutter, Mass. Super, at *2; Houston, 2000 WL 1273373 at *3. Further, the court finds nothing in G.L.c. 183, §58 that warrants extending the title certification duty imposed by G.L.c. 93, §70. For this reason, Defendants’ Motion for Summary Judgment as to Count I (breach of contract) will be ALLOWED and Mrs. Mercuri’s Partial Motion for Summary Judgment as to liability on this claim will be DENIED.[7]

III. Legal Malpractice

In support of their Motion for Summary Judgment on Count II, the Defendants assert that: (1) the claim is barred by the statute of limitations; and (2) even if not barred, it fails because they had no attorney-client relationship with Mrs. Mercuri. In response, Mrs. Mercuri states the legal malpractice claim is not time barred because she did not discover the Defendants’ malpractice until June 2003, when they allegedly acknowledged their error for the first time. Further, Mrs. Mercuri claims she had a direct and implied attorney-client relationship with the Defendants and requests the court enter judgment as to the existence of such a relationship.

A. Statute of Limitations

First, the Defendants argue the legal malpractice claim should fail, even if there was an attorney-client relationship, because it is barred by the statute of limitations. Pursuant to G.L.c. 260, §4, “(a)ctions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues.” An action “accrues” when the plaintiff knows or reasonably should know that he or she has been harmed by the defendant’s conduct. Williams v. Ely, 423 Mass. 467, 473 (1996). This is the so-called discovery rule. Under this rule, the statute of limitations begins to run when an injury is no longer “inherently unknowable,” and a reasonably prudent person in the plaintiffs position, reacting to any suspicious circumstances of which he might be aware, should have discovered the harm and its cause. Bowen v. Ely Lilly & Co., 408 Mass. 204, 206-08 (1990). “The plaintiff need not know the extent of the injury or know that the defendant was negligent for the cause of action to accrue . . . Once the client or former client knows or reasonably should know that he or she has sustained appreciable harm as a result of a lawyer’s conduct, the statute starts to run.” Williams, 423 Mass. at 473. Generally, the question of “whether a plaintiff in a particular position knew or should have known of the defendant’s wrongful conduct is for the fact finder.” Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 377 (2008).
Here, Mrs. Mercuri filed her Complaint on December 16, 2005, requiring the underlying action to have accrued on or after December 16, 2002. The Defendants argue this action accrued, at the latest, sometime around May 2002 when Mr. Calendrello informed Mrs. Mercuri and/or Mr. Mercuri their driveway was encroaching on his property. Mrs. Mercuri claims she did not discover the Defendants’ alleged malpractice until June 2003, when the Calendrellos filed suit claiming ownership of Brackett Street.
The court is not convinced Mr. Calendrello’s statement that Mrs. Mercuri’s driveway was encroaching on his property can be said to have put her on notice regarding possible negligence on the part of her attorney when said attorney, hired to negotiate the purchase of the property in question, allegedly repeatedly stated she was the owner. Neither, however, is the court persuaded that as a matter of law Mrs. Mercuri could not have reasonably known about her possible injury prior to June 2003. At this stage, the court does not have sufficient information to make the statute of limitations issue so clear cut as to take it out of the hands of a jury. See id. (reversing partial allowance of summary judgment on grounds that factual issue related to statute of limitations and discovery rule was “not so clear cut as to remove it from the fact finder’s consideration”).

B. Attorney-Client Relationship

Next, the Defendants claim Mrs. Mercuri’s malpractice claim fails because they had no attorney-client relationship with her. The elements of legal malpractice closely follow those of the traditional negligence action. See Fishman v. Brooks, 396 Mass. 643, 646-47 (1986). To prevail on a malpractice claim against an attorney, “a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained; that the client has incurred a loss; and that the attorney’s negligence is the proximate cause of the loss.” Colucci v. Rosen, Goldberg, Slavet, Levenson, & Wekstein, P.C., 25 Mass.App.Ct. 107, 111 (1987). The duty the attorney owes is premised on the attorney-client relationship, Spinner v. Nutt, 417 Mass. 549, 552 (1994), the existence of which is generally a question of fact. See Page v. Frazier, 388 Mass. 55, 61 (1983). This relationship “may be, but need not be, [evidenced by an] express [contract]; the relationship can be implied from the conduct of the parties.” Id. at 62. Such a relationship is implied “when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney’s professional competence, and (3) the attorney, expressly or impliedly agrees to give or actually gives the desired advice or assistance.” Miller v. Mooney, 431 Mass. 57, 61 (2000) (internal citations and quotations omitted).
*539 In the case at bar, there is no evidence of a contract referencing an express attorney-client relationship between Mrs. Mercuri and the Defendants. Nevertheless, there are facts, if proven, from which a jury could find there existed an implied attorney-client relationship. First, Mrs. Mercuri alleges she and Mr. Mercuri hired the Defendants to represent them during the purchase negotiations because Mr. Mercuri knew Newhouse socially, and that this representation continued through, and even after, the closing. In support of her contention, Mrs. Mercuri references a facsimile transmission dated March 1, 2002, which indicates Lambert was involved in preparing the purchase and sales agreement. She also presents deposition testimony which suggests she and Mr. Mercuri contacted New-house and/or Lambert, even after moving into 176 McCarthy Way, when Mr. Callendrello indicated he owned Brackett Street. In contrast, the Defendants claim they were merely hired to represent the lender at the closing. In support, the Defendants’ reference the disclosure Mrs. Mercuri signed which stated “[t]he responsibility of the attorney for the Lender is to protect the interest of the Lender. You, the Borrower, may at your own expense, engage an attorney of your own selection to represent your interest in this transaction.”
In addition, though the Defendants claim they made no representations as to the state of the title for Brackett Street, there is contradictory evidence suggesting Mrs. Mercuri and/or Mr. Mercuri sought the Defendants’ advice regarding whether Brackett Street was included in the purchase of 176 McCarthy Way. According to deposition testimony, throughout the purchase and sales negotiations Mrs. Mercuri and her husband questioned Newhouse and/or Lambert about the ownership of Brackett Street and the Defendants, on various separate occasions, replied “this is your land,” “this is a non-issue,” the “neighbor has no right,” and “it’s your land; don’t worry about it.” Therefore, there are issues of fact regarding the existence of an attorney-client relationship which preclude summary judgment for either party as to Count II (legal malpractice).

TV. Emotional Distress

Count III of the Amended Complaint alleges the Defendants’ conduct constitutes intentional and negligent infliction of emotional distress.

A. Intentional Infliction of Emotional Distress

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the defendant’s intentional or reckless conduct (2) was so extreme and outrageous (3) that it caused the plaintiff severe emotional distress beyond that which a reasonable person would be expected to endure. Restatement (Second) Torts §46(1); see also Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976). To be considered “extreme and outrageous,” the defendant’s conduct must go beyond all possible bounds of decency and be utterly intolerable in a civilized community. See Sena v. Commonwealth, 417 Mass. 250, 265 (1994). Insults, ill manners, rough language, inconsiderate and unkind acts, even threats, do not give rise to liability for intentional infliction of emotional distress. See Cady v. Marcella, 49 Mass. App.Ct. 334, 340-41 (2000), quoting Sena, 417 Mass. 263-64.
Here, the Defendants argue Mrs. Mercuri has failed to present a viable claim for intentional infliction of emotional distress because none of the conduct alleged, even if true, could be considered extreme and outrageous. The court agrees. The Defendants’ conduct, i.e., informing Mrs. Mercuri and Mr. Mercuri that Brackett Street was included in the purchase of 176 McCarthy Way without having completed a title certification search of Brackett Street, even if true, does not demonstrate the level of “reckless[ness], ruthlessness or deliberate malevolence” required to state a claim for intentional infliction of emotional distress. See Conway v. Smerling, 37 Mass.App.Ct. 1, 8 (1994).
Furthermore, Mrs. Mercuri has failed to adequately address this argument. She has not come forward with any evidence demonstrating the extreme and outrageous nature of the Defendants’ conduct, an essential element of her claim. “A complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); see also Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976) (stating court grants motion for summary judgment where moving party has carried its burden and plaintiff has not responded with specific facts to establish a triable issue). Thus, Defendants’ Motion for Summary Judgment as to Count III (intentional infliction of emotional distress) will be ALLOWED.

B. Negligent Infliction of Emotional Distress

To recover for negligent infliction of emotional distress, the plaintiff must establish that: (1) the defendant was negligent; (2) plaintiff suffered emotional distress; (3) defendant’s negligence caused the emotional distress; (4) there was a physical manifestation of the distress; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. See Rodrigues v. Cambridge Hous. Auth., 443 Mass. 697, 701 (2005). Physical harm to the plaintiff, manifested by objective symptomatology is a critical element of this tort. Payton v. Abbott Labs., 386 Mass. 540, 557 (1982). Therefore, a plaintiff must provide “sufficient objective evidence of physical manifestation [s] of mental distress to survive a summary judgment motion.” Sullivan v. Boston Gas Co., 414 Mass. 129, 139 (1993). Here, Mrs. Mercuri has again failed to present any facts establishing a triable issue; she has demonstrated no evidence of a physical manifestation of the emotional distress allegedly caused by the Defendants’ conduct. For this reason, Defendants’ *540 Motion for Summary Judgment will be ALLOWED as to Count III (negligent infliction of emotional distress).
V: Chapter 93A
Count IV of the Amended Complaint alleges the Defendants’ conduct constituted an unfair and deceptive trade practice in violation of G.L.c. 93A. In support of their Motion for Summary Judgment, the Defendants argue this claim fails because Mrs. Mercuri has not shown that their alleged conduct, even if true, falls within the penumbra of some common law, statutory, or other established concept of unfairness. In response, Mrs. Mercuri argues she is entitled to summary judgment as to liability on this claim because violation of G.L.c. 93, §70 is a per se violation .of G.L.c. 93A.
General Laws c. 93, §70, states in relevant part, “willful failure by an attorney to render a certification to the mortgagor as required by the provisions of this section shall constitute an unfair and deceptive practice under the provisions of Chapter 93A.” Because the court has concluded the Defendants complied with the requirements of G.L.c. 93, §70, which is the basis for Mrs. Mercuri’s Chapter 93A claim, there can be no Chapter 93A liability. Therefore, the Defendants’ Motion for Summary Judgment as to Count IV (Chapter 93A) will be ALLOWED and Mrs. Mercuri’s Partial Motion for Summary Judgment as to liability will be DENIED.

ORDER

For the reasons explained above, it is hereby ORDERED that:
1. Defendants’ Motion for Summary Judgment is ALLOWED as to Count I (breach of contract), Count III (negligent and intentional infliction of emotional distress), and Count IV (violation of Chapter 93A);
2. Defendants’ Motion for Summary Judgment is DENIED as to Count II (legal malpractice); and
3. Mrs. Mercuri’s Cross-Motion for Partial Summary Judgment is DENIED.

Mrs. Mercuri’s husband, Michael Mercuri (“Mr. Mercuri”), was involved in her property purchase; however, because he owned a business, the house was put exclusively in her name. They have since divorced and, though Mr. Mercuri’s interactions with the Defendants are relevant, he is not a party to the current suit.

Brackett Street is a “paper street” running between 176 McCarthy Way and 184 McCarthy Way. The term “paper street" is defined as “[a] thoroughfare that appears on plats, subdivision maps, and other publicly filed documents, but that has not been completed or opened for public use.” BLACK’S LAW DICTIONARY 1462 (8th ed. 2004).

Mrs. Mercuri states she and Mr. Mercuri hired Newhouse’s firm because Mr. Mercuri knew Newhouse socially; they played softball together and were “friends.” In support of her contentions, there is a facsimile transmission contained in the record, on letterhead from the “Law Office of Michael J. Newhouse & Associates, P.C” and dated March 1, 2002, which indicates Lambert, an associate working at Newhouse’s office, was involved in negotiating and/or drafting the purchase and sales agreement between Mrs. Mercuri and the Bateses. The facsimile references changes Lambert made to the purchase and sales agreement and requests Mrs. Mercuri and Mr. Mercuri review certain sections of the agreement for their approval.

In addition, the Defendants have filed a Motion to Amend Their Motion for Summary Judgment (the “Motion to Amend”). The Defendants’ Memorandum of Law in Support ofTheir Motion for Summary Judgment failed to address Mrs. Mercuri’s claim for intentional infliction of emotional distress. Shortly after filing their Motion for Summary Judgment, however, Defendants filed the Motion to Amend, which addresses this claim. The court ALLOWS the Motion to Amend and addresses the merits of the intentional infliction of emotional distress claim. There is no prejudice to Mrs. Mercuri where the Motion to Amend was filed within a week of Defendants’ Motion for Summary Judgment. Furthermore, the Amended Complaint was not ideally drafted, identifying two separate claims, negligent infliction of emotional distress and intentional infliction of emotional distress, under one count.

There is no certification contract and thus, this is not truly a breach of contract claim. Rather, it is more appropriately viewed as a statutory claim. Mrs. Mercuri is asserting Defendants violated G.L.c. 93, §70, the title certification statute, by failing to include Brackett Street in the title certification search for 176 McCarthy Way.

This finding, however, does not mean Mrs. Mercuri does not have a viable claim premised on a malpractice theory. If the Defendants are found to have had an attorney client relationship with Mrs. Mercuri, they may have had a separate duty, pursuant to G.L.c. 183, §58, to complete a title search to ensure Brackett Street was included in Mrs. Mercuri’s deed. The obligations imposed on the title certification attorney at the closing are different from the fiduciary duties an attorney owes to his client. In addition, it is likely the obligation to ensure the validity of the presumption set forth in G.L.c. 183, §58 would be strengthened where, as is the allegation here, an attorney representing a purchaser made particular representations, during the purchase negotiations, about what was and was not included in the purchaser’s deed.