THE GENERAL HOSPITAL CORPORATION[1] vs. RATE SETTING
COMMISSION.

Suffolk. February 7, 1990. - April 9, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Hospital*, Costs, Uncompensated services. *Rate Setting Commission. Administrative Law*, Agency.

The Rate Setting Commission acted properly within its discretion to establish a procedure for making preliminary settlements of money from a Statewide pool designed to distribute equitably among acute care hospitals the costs of free care and bad (patient) debts, and a certain hospital did not demonstrate any basis for challenging the procedure. [230-231]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 21, 1989.

The case was reported by *Greaney*, J.

*Edward D. Kalman* (*Rochelle H. Zapol* with him) for the plaintiff.

*Ruth A. Bourquin*, Assistant Attorney General (*Pamela Green* with her) for the defendant.

WILKINS, J. In this case, which a single justice of this court reserved and reported on a statement of agreed facts, the plaintiff, known as Massachusetts General Hospital (hospital), challenges various aspects of a procedure that the Rate Setting Commission (commission) established to make certain preliminary financial adjustments with hospitals for fiscal years 1986 and 1987. During those fiscal years, the commission was directed to operate a Statewide uncompensated care pool for hospitals "to more equitably distribute the burden of financing uncompensated acute hospital services

[1]Doing business as Massachusetts General Hospital.

across all acute hospitals." G. L. c. 6A, § 75, inserted by St. 1985, c. 574, § 12 (§ 75).[2]

Uncompensated services, for our purposes, can be defined as free care furnished to patients by a hospital and bad debts represented by unpaid bills for patient care. See G. L. c. 6A, § 31, as appearing in St. 1985, c. 574, § 1 (defining "free care" and "bad debt"). Under the pool "[t]he costs of uncompensated care are distributed equitably among acute care hospitals through a system that works somewhat like an assigned risk pool." *Boston* v. *Aetna Life Ins. Co.*, 399 Mass. 569, 583 n.16 (1987). The purpose of the pool, stated simply, is to cause each acute care hospital to assume financial responsibility for a percentage of total Statewide uncompensated care equal to the percentage of total Statewide private sector care (costs for the care of patients not insured by governmental programs) provided by that hospital. See G. L. c. 6A, § 75 (1). Those hospitals providing proportionately more uncompensated care than the Statewide average would receive payments from the pool, while those providing proportionately less would make payments into the pool.

Chapter 6A, § 75 (3), required the commission to establish a system of interim monthly payments of estimated liabilities to and from the pool during each fiscal year. G. L. c. 6A, § 75 (3). Under this system, the commission had to estimate for each relevant fiscal year the amount that each hospital should pay to or receive from the pool for that year. *Id.* If, according to these estimates, a hospital was to have an annual net liability to the pool, it had to make monthly payments to the pool. If the commission estimated that the pool would have an annual net liability to a hospital, the hospital would receive monthly payments. *Id.* At the end of the fiscal year, the commission, acting on actual financial data, was to determine the precise amount owed to or from the pool for the year and make an appropriate adjustment. The record is

---

[2]Section 75 governs the operation of the pool for the fiscal years involved here (see St. 1988, c. 23, § 92), even though it was repealed by St. 1988, c. 23, § 18. In subsequent fiscal years, the pool has been administered by the Department of Medical Security. G. L. c. 118F, § 15 (1988 ed.).

silent on the question whether the hospital was a debtor or creditor of the pool during the interim payment process of either relevant fiscal year. The hospital makes no claim here that the commission did not comply with these statutory requirements or with the requirement that, as more current data became available during the fiscal year, adjustments in the estimates should be made.

In determining the final amount owed to or from the pool for a particular fiscal year, § 75 (1) requires the commission to make detailed calculations based on actual, as opposed to estimated, financial data. The collection and verification of these data by the commission is a time-consuming, staff-intensive process. The parties have agreed that the process "depends on audits of data at each acute hospital." At the time the statement of agreed facts was filed, the commission had not completed the final settlement process for fiscal years 1986 and 1987.

The commission recognized that the delay between the end of a fiscal year and the time of final settlement following audits could burden hospitals that, based on information gathered prior to final settlement, were likely to be entitled to payments from the pool. Wholly apart from the fiscal year interim payment procedure and the postaudit final settlement procedure, and without explicit statutory direction, the commission devised a preliminary settlement system by which, using partially completed audits of actual costs and uncompensated care, new estimated determinations of liability to or from the pool could be made. The commission decided to pay or to collect from each hospital, as the case might be, a preliminary settlement amount of 95% of the reestimated liability. It also permitted debtors of the pool to use a payment plan, deferring payment of the full preliminary obligation over time. No part of the preliminary settlement system was expressed in a regulation that the commission adopted in accordance with G. L. c. 30A (1988 ed.). See G. L. c. 6A, § 65 (1988 ed.).

The commission's calculations for the hospital for the fiscal years 1986 and 1987 showed that the pool owed the hos-

pital preliminary settlements of $536,700 and $1,977,490, respectively, representing 95% of the estimated final settlements. At the time the statement of agreed facts was filed, the pool had not paid the hospital the full amount of either of these preliminary settlement amounts, but the hospital had received preliminary settlements of $506,332 for 1986 and $1,347,458 for 1987.[3]

The hospital complains that (1) it should have received 100% of its estimated preliminary settlement credit, (2) the commission's allowance of deferred payments to the pool by debtor hospitals was unlawful, and (3) the preliminary settlement procedure was not established pursuant to a properly adopted regulation.

These arguments all fail because the hospital was not entitled, as a matter of right, to any preliminary settlement. The commission established the preliminary settlement procedure to facilitate the settlement process, but it was not obliged to do so. The hospital thus has received more than $1,800,000 at a time when it had no right to receive any funds from the pool, except as part of a process the commission voluntarily established within its implied authority under § 75. See *Levy v. Board of Registration in Medicine,* 378 Mass. 519, 525 (1979). Although a hospital that was a debtor of the pool might have cause to complain about the adoption of the preliminary settlement procedure, it is difficult to identify a basis for the hospital's complaint in this case.

The commission, in any event, did not abuse its discretion when it adopted the 95% adjustment limitation. The payment or collection of all but 5% of what remained of estimated preliminary amounts was a choice the commission could properly make within its discretion. The fact that under the statutory interim payment system the full annual estimate of a hospital's departure from the Statewide norm had to be collected or paid does not invalidate the commis-

---

[3]Those installment payments equaled 94% of the reestimated liability under the preliminary settlement procedure for 1986, and 68% for 1987. We are advised that additional payments have been made since the statement of agreed facts was signed.

sion's decision to limit preliminary settlements to 95% of the indicated final settlement.

The commission also acted within its discretion in adopting a deferred payment plan for hospitals that were debtors of the pool. On this record, we do not know what deferrals of payments to the pool the commission approved or how any such deferral may have affected payments to the hospital. We do know that, for any given time period, § 75 (5) forbids payments from the pool in excess of receipts for that time period. Although no deferral plan would have been proper during the operation of a fiscal year's interim payment system (§ 75 [3]), the commission had discretion to adopt such a process in the preliminary settlement procedure.

The hospital was not harmed by the implementation of the preliminary settlement procedure without the adoption of a regulation under G. L. c. 6A, § 65, and G. L. c. 30A. If the preliminary settlement procedure was adopted unlawfully, the hospital has nevertheless benefited from it. We do not imply, however, that the commission was obliged to establish the preliminary settlement procedure by a regulation. We do not reach the point.

The hospital also claims that the delay in completion of final settlements violates G. L. c. 6A. The hospital has agreed that audits are an essential part of the final settlement process. It points to no statutory time limit on the payment of final settlements. Any statutory requirements for the completion of audits that might be applicable to the final settlement of payments to and from the pool, even if the requirements were mandatory and not directory, tell us nothing about when final settlements must be made. The hospital's claim lacks merit.

We need not pass on the hospital's claims that the delay in payments was an unconstitutional taking of its property, that the commission violated some fiduciary duty in its administration of the pool, and that the hospital is entitled to interest on the amounts owed. The premise for each of these claims — that the hospital had a right to funds from the pool before final audit and settlement — is not valid.

A judgment shall be entered denying the hospital's prayers for monetary and injunctive relief and declaring that the commission's preliminary settlement procedure was lawful in so far as it provided for the payment of only 95 % of the amount estimated to be due to hospitals, for the implementation of deferred payment plans, and for the deferral of final payments until after the completion of hospital audits.

*So ordered.*