MASSACHUSETTS HOSPITAL ASSOCIATION, INC., & others[1]
*vs.* DEPARTMENT OF MEDICAL SECURITY & another.[2]

Suffolk. February 5, 1992. - March 26, 1992.

Present: LIACOS, C J., NOLAN, LYNCH, O'CONNOR, & GREANEY. JJ

*Statute*, Construction. *Administrative Law*, Regulations, Agency, Agency's interpretation of statute. *Regulation. Hospital*, Medical reimbursement, Uncompensated services, Debt collection.

General Laws c. 118F, § 15, granting the Department of Medical Security authority to manage the Statewide uncompensated care pool and to promulgate regulations establishing criteria for hospital credit and collection policies, did not authorize the department to establish performance standards for hospital debt collection practices and to limit the amount of reimbursement an acute care hospital may receive from the uncompensated care pool for bad debt collection attributable to failed collection efforts. [342-348]

CIVIL ACTION commenced in the Superior Court Department on June 7, 1990.

The case was heard by *J. Harold Flannery*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William L. Pardee*, Assistant Attorney General, for the defendants.

*Andrew C. Griesinger* (*Michelle S. Wolf & James Roosevelt, Jr.*, with him) for the plaintiffs.

NOLAN, J. The plaintiffs challenge the validity of certain regulations promulgated by the Department of Medical Security (department), which establish performance standards

---

[1]Brockton Hospital, Carney Hospital, Lowell General Hospital, and Norwood Hospital.

[2]Commissioner of Medical Security.

for hospital debt collection practices and limit the amount of reimbursement an acute hospital may receive from the State-wide uncompensated care pool (pool) for bad debt attributable to failed collection efforts. The plaintiffs prevailed on their motion for summary judgment in the Superior Court, which held the regulations invalid as a matter of law. Following the entry of final judgment, the department noticed its appeal. Subsequently, the plaintiffs requested an injunction, compelling the department to conform the administration of the pool to the judge's ruling. A Superior Court judge denied the plaintiffs' request. The plaintiffs appealed from the denial to a single justice of the Appeals Court, who ordered that the department's appeal be expedited.[3] We transferred the case to this court on our own motion.

The central issue in this case is whether the statutory grant of authority to the department to manage the State-wide uncompensated care pool (G. L. c. 118F, § 15 [4] [1990 ed.]), and to promulgate regulations establishing criteria for hospital credit and collection policies (G. L. c. 118F, § 15 [9] [1990 ed.]), authorizes the department to limit the amount of bad debt for which hospitals may seek reimbursement from the pool. 117 Code Mass. Regs. § 2.04 (4)(d)(1989). The department claims that the regulation represents a valid exercise of the broad management authority delegated to it under G. L. c. 118F, § 15 (9). The plaintiffs argue that the regulation exceeds the authority granted to the department under G. L. c. 118F, and, in fact, contradicts the specific mandates of that statute. Additionally, the plaintiffs contend that the regulation is unconstitutional, irrational, arbitrary, and capricious. We conclude that the Superior Court judge correctly determined that the regulation exceeds the power granted to the department by G. L. c. 118F, § 15.

---

[3]The single justice further ruled that an order requiring compliance with the Superior Court ruling would enter after January 1, 1992, on presentation of a form of order, if such was still necessary.

1. *The statute.* We begin our discussion with a review of the statute, "the principal source of insight into Legislative purpose." *Simon* v. *State Examiners of 'Electricians*, 395 Mass. 238, 242 (1985), quoting *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984). Our focus is on whether G. L. c. 118F grants the department authority to establish a performance standard for credit and collection which acute hospitals[4] must meet in order to receive reimbursement from the pool for uncollectible bad debt. In addressing this question, we bear in mind that "[a]n agency's powers are shaped by its organic statute taken as a whole" (*Commonwealth* v. *Cerveny*, 373 Mass. 345, 354 [1977]), and that the "[p]owers granted include those necessarily or reasonably implied." *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 75 (1979), and cases cited. We also acknowledge that, regardless of the merits of particular regulations, an administrative body has no inherent authority to issue regulations (*Telles* v. *Commissioner of Ins.*, 410 Mass. 560, 565 [1991]), or "promulgate rules or regulations that conflict with the statutes or exceed the authority conferred by the statutes by which the agency was created." *Massachusetts Mun. Wholesale Elec. Co.* v. *Energy Facilities Siting Council*, 411 Mass. 183, 194 (1991), and cases cited.

General Laws c. 118F (1990 ed.) was enacted as part of the Health Security Act of 1988. St. 1988, c. 23, § 45. It is a comprehensive statute, which was intended "to promote the accessibility of health care services for all [the Commonwealth's] citizens." G. L. c. 118F, § 1. The statute established the department "to provide, on a basis calculated to reduce or contain the costs of the program, a program of insurance coverage for health care services for persons in the commonwealth who are not otherwise eligible for or covered by a health insurance plan." G. L. c. 118F, § 3. The statute authorizes the department to manage the administration of

---

[4]General Laws c. 118F, § 2 (1990 ed.), defines an "[a]cute hospital" as "any hospital, which contains a majority of medical-surgical, pediatric, obstetric, and maternity beds as defined by the department of public health."

the Statewide uncompensated care pool[5] as part of the health care insurance program and grants the department authority to develop and to enforce regulations regarding the administration of the pool. G. L. c. 118F, § 15 (4), (9). Specifically, § 15 (9) states, in pertinent part: "The department shall promulgate regulations establishing criteria for hospital credit and collection policies . . . to ensure that hospitals make reasonable efforts to collect payment for hospital services prior to attributing those services to bad debt or free care. . . . The department shall also promulgate regulations necessary to manage the uncompensated care pool pursuant to this section, including, but not limited to: regulations providing audit standards for the pool . . . ."

In addition, the statute establishes a complex formula for determining a hospital's liability to the pool and the liability of the pool to the hospital. G. L. c. 118F, § 15 (2), (3). The statute defines the variables which figure into this formula, including "[r]eimbursable uncompensated care · costs," "[r]eimbursable bad debt costs," "[r]eimbursable free care costs," "[b]ad debt," "[f]ree care," and "[m]aximum reimbursable uncompensated care costs." G. L. c. 118F, § 2. The department is charged with the responsibility of collecting and meting out payments to and from the pool according to the statutory scheme. G. L. c. 118F, § 15 (4).

---

[5]The Legislature created the Statewide uncompensated care pool in 1985 "[i]n order to more equitably distribute the burden of financing uncompensated acute hospital services across all acute hospitals . . . ." St. 1985, c. 574, § 12, codified at G. L. c. 6A, § 75, repealed by St. 1988, c. 23, § 18. The purpose of the pool "is to cause each acute care hospital to assume financial responsibility for a percentage of total Statewide uncompensated care equal to the percentage of total Statewide private sector care (costs for the care of patients not insured by governmental programs) provided by that hospital." *General Hosp. Corp.* v. *Rate Setting Comm'n,* 407 Mass. 227, 228 (1990). The pool is funded by surcharges imposed on nongovernmental payors for hospital care and treatment. Prior to the enactment of G. L. c. 118F, the Rate Setting Commission managed the pool and adopted regulations to effect its proper administration, which were enforced through an audit process. See 114.1 Code Mass. Regs. §§ 25.03, 30.00 (1987). General Laws c. 118F transferred the responsibility of managing the pool to the department.

2. *The regulations.* When the department assumed responsibility for managing the pool in 1988, it conducted a study of hospital collection efforts. The department learned through this study that a large discrepancy existed between the percentage of uncompensated care costs being attributed to bad debt by the various hospitals. The percentage of account receivables being written off as bad debt ranged from two to twenty per cent among the hospitals. The department thereafter sought to quantify how much of the variation in collection rates could be attributed to factors beyond the control of an individual hospital. After analyzing the debt collection practices of acute hospitals, the department concluded that the variation largely was due to qualitative differences in hospital collection techniques.

In response to this situation, and purportedly pursuant to the authority granted by G. L. c. 118F, § 15 (9), the department promulgated a performance regulation which set for each acute hospital "a level of allowable bad debt that reflects industry-wide standards for the collection of bad debt." 117 Code Mass. Regs. § 2.04 (4)(d).[6] The level of "allowable bad debt." represents a slightly higher than average level of collection performance achieved by thirty per cent of acute hospitals. The department adopted a higher than average level of performance in order to create an incentive for hospitals to undertake all reasonable collection efforts. The department concluded that the performance regulation would advance its purpose to encourage maximum efficiency in debt collection and reduce or contain costs of the health care insurance program. G. L. c. 118F, §§ 3, 15. The department also promulgated regulations which expanded eligibility for free care and eased the burden placed on hospitals to collect income verification information from patients. The department's regulations do not limit the amount of reimbursement hospitals may receive for qualified free care services.

---

[6]Title 117 Code Mass. Regs. § 2.04 (4) (d) (1989) reads, in pertinent part, as follows: "The Department will set, for each hospital, a level of allowable bad debt that reflects industry-wide standards for the collection of bad debt. . . ."

3. *The validity of the performance regulation.* The plaintiffs dispute the validity of the department's regulation which limits the amount of bad debt for which a hospital can be reimbursed from the pool. 117 Code Mass. Regs. § 2.04 (4) (d). The plaintiffs assert that the statute empowers the department to establish criteria regulating hospital collection procedure, and not criteria implementing and rewriting policies respecting the over-all statutory scheme for reimbursement. The plaintiffs argue that the Superior Court judge correctly concluded that the performance regulations are repugnant to the statute, since the statute clearly and comprehensively describes the method by which uncollectible bad debt is to be reimbursed from the pool. Moreover, the plaintiffs complain that the department's performance regulation is invalid because it goes beyond "ensur[ing] that hospitals make reasonable efforts to collect payment" and mandates a specific result from collection efforts, reasonable or not. In this regard, the plaintiffs assert that the regulation exceeds the authority granted to the department under G. L. c. 118F, § 15 (9).

The department maintains that G. L. c. 118F, § 15 (9), authorizes it to establish performance standards for hospital credit and collection practices. The department states that the statutory directive to establish "criteria" for hospital collection policy authorizes it to adopt a "standard" of hospital collection performance. Furthermore, the department contends that, by delegating to it the authority to determine whether a hospital has made a reasonable effort to collect a debt (see G. L. c. 118F, § 2), and directing it to promulgate regulations necessary to manage the pool (G. L. c. 118F, § 15 [9]), the Legislature implicitly granted the department the authority to judge the success of hospital collection efforts and to predetermine the level of collection performance which a hospital reasonably should achieve. We do not agree with the department's broad interpretation of its authority under the statute.

In general, we grant substantial deference to an interpretation of a statute by the administrative agency charged with

its administration. *Manning* v. *Boston Redevelopment Auth.*, 400 Mass. 444, 453 (1987). However, "[a]n incorrect interpretation of a statute . . . is not entitled to deference." *Kszepka's Case*, 408 Mass. 843, 847 (1990). In this case, we reject the department's interpretation as it is contrary to the plain language of the statute and its underlying purpose. The performance regulation promulgated by the department pursuant to this incorrect understanding of the statute is, therefore, invalid.

We interpret the words used in a statute with regard to both their literal meaning and the purpose and history of the statute within which they appear. *Sterilite Corp.* v. *Continental Casualty Co.*, 397 Mass. 837, 839 (1986). In applying this rule of construction in this case, we conclude that the Legislature did not expressly or implicitly authorize the department to set "performance standards" for hospital credit and collection practices by empowering it to establish "criteria" for hospital credit and collection policy. Although the term "criteria" is not defined in the statute, it appears clear in the context of the statute to refer to the *procedural* steps which hospitals must take to ensure that a reasonable effort has been made to qualify a patient for free care or to identify a source of payment for a patient's medical expenses, prior to characterizing the cost of services provided to the patient as uncollectible, reimbursable bad debt. That the department appreciates this meaning of "criteria" is evident from the fact that it used that term in its regulations dealing with hospital credit and collection policies. See 117 Code Mass. Regs. §§ 2.06-2.10 (1989). These regulations, significantly, are substantially similar to those adopted by the Rate Setting Commission when it established criteria for hospital collection policy. See 114 Code Mass. Regs. § 25.03 (1987).

In our opinion, the term "criteria," as it appears in the statute, is not interchangeable with the term "standard" as the department argues, since there is no language in the statute which suggests that the Legislature intended that the department predetermine a level of collection performance and thereby assume the power to deny hospitals compensation

from the pool when their reasonable efforts to collect payment for medical expenses prove fruitless. On the contrary, it is clear that the Legislature has retained and exercised its authority to regulate eligibility for bad debt reimbursement by delineating the amounts to be deposited and disbursed from the pool and defining the terms applicable to that determination. See G. L. c. 118F, §§ 2, 15. The only condition the Legislature has placed on an acute hospital's ability to be reimbursed for bad debt is that the hospital demonstrate that it has made a "reasonable effort" to collect payment. G. L. c. 118F, §§ 2, 15 (9). The Legislature has delegated authority to the department to make the determination as to whether this condition has been met through the audit process and by reference to the hospital's compliance with the procedural criteria established by the department relative to acceptable collection practices. *Id.* The department's authority is thus narrowly defined. It is reasonable to assume that the Legislature intended that, in exercising its authority, the department would fashion criteria for hospital collection policy with a view toward ensuring maximum efficiency in hospital debt collection. It is not reasonable, however, to conclude that the Legislature intended the department to establish a regulation which demands a certain result from collection efforts. Such a regulation undermines the statutory purpose of "promot[ing] the accessibility of health care services for all [the Commonwealth's] citizens," G. L. c. 118F, § 1, because it forces hospitals to absorb their uncompensated care costs, while contributing to the Statewide cost of uncompensated care, and consequently reduces their capacity to provide necessary medical services. More importantly, however, the performance regulation is contrary to the express provisions of the statute, as it imposes an additional condition on hospitals' eligibility for debt reimbursement. The Legislature has fully regulated the subject of bad debt reimbursement in the statute, and the department, therefore, cannot "further regulate [that topic] by the adoption of a regulation which is repugnant to the statute." *Commonwealth* v. *Johnson Wholesale Perfume Co.*, 304 Mass. 452, 457 (1939).

Since we decide that the department's performance regulation is invalid and unenforceable as unauthorized by the statute, we do not address the additional challenges to the regulation presented by the plaintiffs.

*Judgment affirmed.*