King, J.
INTRODUCTION
The plaintiffs in these consolidated actions are organizations and individuals involved in animal welfare issues and the enforcement of laws intended to prevent cruelty to animals.[4] They seek to have declared as invalid the regulation promulgated by the defendant Massachusetts Division of Fisheries and Wildlife set forth at 321 C.M.R. §3.02([5]) (1989) (the Regulation) which allows the use of padded jaw traps to harvest fur-bearing animals. On October 31, 1989, this court (Botsford, J.) allowed plaintiffs’ motion for a preliminary injunction and enjoined the enforcement of those provisions of the Regulation which permit the use, setting, or maintenance of padded jaw traps on land. On May 7, 1992, the court (McDaniel, J.), denied a motion for summary judgment of the Massachusetts Division of Fisheries and Wildlife. That motion was based on the argument that the plaintiffs lacked standing to maintain this action. Presently before the court are cross-motions for summary judgment. For the reasons stated below, the plaintiffs’ motion for summary judgment will be allowed, the defendants’ motion for summary judgment will be denied, and a declaratory judgment shall enter in accordance with this decision.
BACKGROUND
The material facts in this case are not disputed. In 1974, Massachusetts enacted General Laws c. 131, §80A which prohibits the use of steel-jaw foothold traps as well as any other trap which injures an animal or causes it continued suffering. General Laws c. 131, §80A states in relevant part:
No person shall use, set, place or maintain any steel jaw leghdld trap on land for the capture of fur-bearing mammals except in or under buildings on land owned, leased or rented by him. The steel jaw leghold trap may be used for the capture of fur-bearing mammals in water only if set in such a manner that all reasonable care is taken to insure that the mammal dies by drowning in a minimum length of time. No other device which is set in such a manner that it will knowingly cause continued suffering to such a mammal caught therein, or which is not designed to kill such mammal at once or take it alive unhurt shall be used, set, placed or maintained for the capture of fur-bearing mammals; . . . (emphasis added).
Due to widespread opposition to the use of steel-jaw foothold traps in North America, during the 1980s many trappers began using modified foothold traps which pad the jaws of the foothold in order to reduce leg injuries to the animals. These traps are referred to as soft-catch traps or padded-jaw traps. In 1989, the Massachusetts Supreme Judicial Court considered whether soft-catch trapping systems are steel-jawed traps for purposes of G.L.c. 131, §80A, and the Supreme Judicial Court held that they are not. Commonwealth v. Black, 403 Mass. 675, 679 (1989). The Supreme Judicial Court, however, declined to rule on whether padded jaw traps are prohibited by the language in G.L.c. 131, §80A, which prohibits the use of (1) traps which do not capture the animal unhurt; and (2) traps which knowingly cause continued suffering to the animal. See id. at 677 n.3. Nevertheless, following the Black decision, the Massachusetts Fisheries and Wildlife Board approved the Regulation at issue in the present case which allows for the use of padded-jaw traps in certain circumstances.[6]
In the present case, the plaintiffs challenge the Regulation, alleging that padded-jaw traps are prohibited by the language in G.L.c. 131, §80A which prohibits the use of (1) traps which do not capture the animal unhurt and (2) traps which knowingly cause continued suffering to the animal. The plaintiffs further argue that, because padded-jaw traps are illegal under G.L.c. 131, §80A, the Regulation must be declared invalid. In response, the defendants argue that the Regulation is valid because there is a conceivable basis for the Regulation. Exhibit 2 is a steel-jaw foothold trap which the parties concede is prohibited by G.L.c. 131, §80A. Exhibit 1 is a Woodstream model number 3 coyote, padded-jaw trap which the parties agree is specifically approved by the Regulation. This trap is manufactured by the Woodstream Corporation which describes its trap as a “soft-catch trapping system.”[7]
DISCUSSION
I. Summary Judgment Standard
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as amatter of law. *421 Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson, supra at 17.
II. The Regulation is inconsistent with G.L.c. 131, §80A
The defendants contend that the plaintiffs have the burden of proving that the Regulation bears no conceivable relationship to G.L.c. 131, §80A. American Family Life Assurance Co. v. Commissioner of Insurance, 388 Mass. 468. 478 (1983). The Court disagrees. The so-called conceivable basis test applies when a regulation authorized by statute is claimed to be “arbitrary and capricious.” Id Here, the plaintiffs do not argue that the Regulation is arbitrary and capricious. Rather, they argue that the Regulation conflicts with the clear purpose of the statute. Under these circumstances, the plaintiffs have the burden of establishing that the Regulation permitting the use of padded-jaw traps conflicts with the legislative purpose as set forth in the statute.
In support of the Regulation, the defendants maintain that it constitutes a reasonable accommodation between the interests of trappers and the welfare of mammals. There is nothing in G.L.c. 131, §80A which suggests that the Legislature intended to delegate this role to the Division of Fisheries and Wildlife. Rather, the statute is aimed at prohibiting certain types of traps in order to promote the well-being of animals. While the Division of Fisheries and Wildlife has broad rulemaking authority over “methods of taking” fur-bearing mammals, see G.L.c. 131, §5, that authority does not permit the Division of Fisheries and Wildlife to enact a regulation in conflict with a specific statutory prohibition. See Receiver of the Boston Housing Authority v. Commissioner of Labor & Industries, 396 Mass. 50, 57 (1985); School Comm. of Springfield v. Board of Educ., 362 Mass. 417, 441 n.22 (1972). See also 1975/76 Op. Atty. Gen. No. 16, Rep. A.G., P. D. No. 12 at 88-89 (1976) (advising the Division that §80A limited the broad rulemaking authority vested by G.L.c. 131, §5 and other similarly general statutes).
When construing a statute, language which is clear and unambiguous must be given its plain and ordinary meaning. Brook House Condominium Trust v. Automatic Sprinkler Appeals Bd., 414 Mass. 303, 306 (1993). Courts must consider not only the individual words of the statute, but the statute as a whole, being certain to construe the statute in a manner which reflects the general statutory plan. St. Germaine v. Pendergast, 411 Mass 615, 625 (1992). A court cannot read into the plain words of a statute a legislative intent which the words of the statute do not express. Civitarese v. Middleborough, 412 Mass. 695, 700 (1992).
Here, the plain language of G.L.c. 131, §80A shows a legislative intent to prevent injury and suffering to animals. The statute prohibits the use of traps unless those traps immediately kill the animal or take the animal “alive unhurt” without inflicting “suffering.” The defendants urge this court to hold that the statute does not prohibit the use of padded-jaw traps because the designers of these traps “intended” to construct a trap which would take the animal unhurt. There is nothing in the statutory language of G.L.c. 131, §80A, however, which suggests such a narrow legislative intent. The word “designed,” when considered along with the words to take the animal “alive unhurt,” must be construed to mean that in a workable, practical sense the trap’s design takes animals unhurt. See Massachusetts Hospital Ass’n., Inc. v. Dept. of Medical 412 Mass. 340, 346 (1992) (statutory words interpreted with regard to literal meaning as well as purpose and history of statute within which those words appear). Holding that a trap which was intended by its designers to take the animal unhurt, but that in actuality hurts animals, is a trap which G.L.c. 131, §80A does not prohibit, would clearly defeat the Legislature’s expressed intent as evidenced in the plain language of the statute. Accordingly, if the padded-jaw traps authorized by the Regulation take animals alive but hurt, even though those injuries may not be severe or easily detected, its use is prohibited by G.L.c. 131, §80A.
In the present case, the plaintiffs have presented uncontradicted evidence, including scientific studies, that the padded-jaw traps authorized by the Regulation hurt animals. (See Exhibit G to Plaintiffs’ Consolidated Memorandum in Support of Their Motion for Summary Judgment.) Indeed, it is manifest from the content of the Regulation that its drafters contemplated the use of traps which would capture animals alive hurt as opposed to “alive unhurt” as required by G.L.c. 131, §80A. The Regulation specifically authorizes a trap “which eliminates or substantially mitigates injury to the trapped mammal...” On this point, the defendants do not contest that, on occasion, animals are hurt by the traps. Although the padded-jaw traps authorized by the Regulation may very well reduce injury to animals when compared to steel-jaw traps, padded-jaw traps do not capture the animals uninjured. See, e.g., Glenn H. Olsen et al., Reducing Injuries to Terrestrial Furbearers by Using Padded Foothold Traps, 16 Wildlife Society Bulletin 303-07 (Fall 1988) (padded traps have potential for reducing injury, the degree of which varies depending on the type of animal trapped); Glenn H. Olsen et al., Injuries to Coyotes Caught in Padded and Unpadded Steel Foothold Traps, 14 Wildlife Society Bulletin 219-23 *422 (Fall 1986) (“All models of padded foothold traps reduced but did not eliminate trap-related foot injuries in coyotes and kit foxes”); Benjamin F. Tullar, Jr., Evaluation of Padded Leg-hold Trap For Capturing Foxes and Raccoons, 31 New York Fish and Game Journal 97-103 (January 1984) (padded traps reduce self-mutilation with respect to raccoons and lessen damage to trapped feet of foxes).[8]
It is apparent from the operation of the Woodstream “soft-catch” trap (Exhibit 1) that it will cause injury to many animals caught in its padded jaws. For example, the violent force brought to bear by the jaws on an animal’s leg is demonstrated by what occurs when a wooden pencil is used to spring the trap: The pencil is crushed and broken in two. Although any comparison between a pencil and an animal leg has its obvious limitations, the exercise dramatically demonstrates the impact on whatever happens to be in the path of the padded jaws when the trap is sprung. Moreover, while the Woodstream coyote padded trap may be designed to trap coyotes, there is nothing to prevent much smaller and fragile creatures, including the family cat or dog, from encountering its crushing grip.
Given this court’s interpretation of G.L.c. 131, §80A and the uncontroverted evidence that the padded-jaw traps authorized by the Regulation causes injury to animals, the defendants have failed to show that there is a genuine, triable issue of fact in the present case. Accordingly, the Regulation will be declared invalid as inconsistent on its face with the statutory language contained in G.L.c. 131, §80A. The plaintiffs also request a permanent injunction preventing the enforcement of the Regulation. Such relief is not appropriate since the court assumes that absent a successful appeal the Regulation will not be enforced now that it has been declared invalid.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for summary judgment is ALLOWED and the defendants’ motion for summary judgement is DENIED.
It is further ORDERED and DECLARED that the following Declaratory Judgment shall enter: The regulation set forth at 321 C.M.R. 53.02(5) is invalid to the extent said regulation permits padded-jaw traps to be used, set, placed or maintained on land, because it contravenes G.L.c. 131, §80A.

 In Civil Action No. 89-6053-B, the parties’ documents now drop reference to plaintiffs American Society for the Prevention of Cruelty to Animals and the Humane Society of the United States in this action. Presumably those plaintiffs have voluntary withdrawn their claims in said civil action, although the documents on file with the court do not establish compliance with Mass.R.Civ.P. 41, 365 Mass. 803-04 (1974).

 There is a statutory proviso permitting other lypes of trap devices to be used in very particular situations, although they would cause the harm the statute is intended to prevent. See G.L.c. 131, §80A(1). The Legislature’s intent clearly is to prohibit other types of trap devices except for the limited specific instances which the Legislature has deemed appropriate. The statutory provisions in §80A, therefore, are a specific limitation on the generalized authority of the director of the Massachusetts Division of Fisheries and Wildlife to “make such rules and regulations relating to . . . methods of taking . . .” under G.L.c. 21, §7 (1990 ed.).

 C.M.R. §§3.02(5)(a) (definition of “(p]added-jaw trap”), and 3.02(5)(b)(14), are set forth in the appendix to this memorandum of decision. Other provisions relative to trapping of fur-bearing mammals with padded-jaw traps are contained in §§3.02(5)(b)(1) through 3.02(5)(b)(13), 3.02(5)(b)(15) through 3.02(5)(b)(Z8), 3.02(5)(c)(l) through 3.02(5)(c)(14), and 3.02(5)(d).

 The Woodstream “soft-catch trapping system” was granted a United States patent on December 10,1985 (patent number 4,557,068). The patent’s abstract provides: “A padded leghold trap of the pivoting jaw type includes recessed portions of the jaws in which respective pads are disposed. The pads each have concave facing surfaces with an inner edge that barely touches the inner edge of the other pad in the sprung position of the jaws, leaving the remainder of the concave facing surfaces mutually spaced. A trapped animal is held between the padded jaws which spring closed and traps the animal’s leg without breaking the leg or causing edema. Attempts by the trapped animal to pull its trapped limb from between the jaws causes the radially inner pad edges to roll over toward the limb and thereby increase the retention forces. A retainer for the pad is disposed over an access slot in the pad, which access slot is provided to deploy the pad on the jaw. The retainer includes a bent lip which deforms the pad toward the jaw to prevent the pad from being pulled off the jaw by a trapped animal. An anchor chain is secured centrally of the trapped frame to assure that forces exerted by a trapped animal in trying to escape are directed generally perpendicular to the jaws to thereby minimize damage to the animal.”

 Furthermore, studies have concluded that even if an animal manifests no overt, physical signs of injury, that animal may have suffered stress-related injuries. See T.J. Kreeger et. al., Pathological Responses to Traps, 54 J. Wildl. Mangt. 147, 159 (1990) (padded traps cause less trauma & stress than unpadded traps). On this point, the court observes that under the Regulation a trapper only has to inspect his traps every 42 hours. Needless to say, an animal caught helpless in a padded-jaw trap for 42 hours without food, water or shelter will suffer substantial psychological injury. 321 C.M.R, 3.02(5)(c)(12).