In re **BOSTON REGIONAL MEDICAL CENTER, Debtor.**

No. 99–10860–CJK.

United States Bankruptcy Court, D. Massachusetts.

June 25, 2001.

D. Ethan Jeffrey, Boston, MA, for Debtor.

Daniel J. Hammond, Boston, MA, for Massachusetts Division of Health Care Finance and Policy.

*MEMORANDUM OF DECISION ON DEBTOR'S OBJECTION TO CLAIM OF MASSACHUSETTS DIVISION OF HEALTH CARE FINANCE AND POLICY*

CAROL J. KENNER, Bankruptcy Judge.

The issue presented by the Debtor's objection to claim is whether amounts owing by the Debtor hospital under Massachusetts law, G.L. c. 118G, § 18, to the Commonwealth's Uncompensated Care Pool are properly deemed excise taxes within the meaning 11 U.S.C. § 507(a)(8)(e). For the reasons set forth below, the Court holds that the obligation is an excise tax and therefore enjoys priority under § 507(a)(8)(e).

### Facts And Procedural History

Before it commenced this bankruptcy case, Boston Regional Medical Center ("the Debtor") owned and operated a 195-bed private, acute-care hospital in Stoneham, Massachusetts. The Debtor filed its petition for relief under Chapter 11 on February 4, 1999, then discontinued operations, began liquidating its assets, and obtained confirmation of a liquidating Chapter 11 plan.

On December 15, 1999, the Commonwealth of Massachusetts, by its Division of Health Care Finance and Planning ("the Division"), timely filed a proof of claim in this case for $2,440,260.49 plus additional unliquidated amounts, with at least $2,223,817 of the claim having priority status under 11 U.S.C. § 507(a)(8). The Debtor, as liquidating agent under the confirmed plan, objected to the amount and priority of the claim. After discovery, the parties now agree on the amount of the claim: $1,702,714 for obligations under G.L. c. 118G, § 18, to the Commonwealth's Uncompensated Care Pool (the "Uncompensated Care Pool Claim")[1]; and $123,866 for an obligation that the parties refer to as "Compliance Liability." The parties agree that the Compliance Liability portion of the claim is a nonpriority, unsecured claim, and that the amount of this portion of the claim will increase to the extent that the Debtor succeeds in avoiding and recovering for the estate under 11 U.S.C. § 547 a prepetition payment on the Compliance Liability debt.[2]

The only issue remaining in dispute concerns the priority of the Uncompensated Care Pool Claim: whether the obligation is an excise tax within the meaning of § 507(a)(8)(E) or, as the Debtor contends, only a nonpriority unsecured claim. The issue is entirely one of law, the parties having stipulated to the facts and submitted the matter for adjudication on the facts presented in their stipulation.[3]

### The Uncompensated Care Pool

The Uncompensated Care Pool is a creature of Massachusetts law. Since 1996, the Pool has been governed by G.L. c.

---

1. The parties agree that the claim in its entirety arose prepetition.

2. The Debtor has filed a still-pending complaint under § 547 to avoid a prepetition payment of $20,644.36 by the Debtor to the Commonwealth on the Compliance Liability debt.

3. The Court held an evidentiary hearing on February 8, 2001; however, neither party adduced evidence at that time because no facts were in dispute. See Evidentiary Stipulation filed February 7, 2001.

118G, § 18[4] and administered by the Division of Health Care Finance and Policy. The Pool is part of the Uncompensated Care Trust Fund, whose purpose is "to provide access to health care for low income uninsured and underinsured residents of the Commonwealth." G.L. c. 118G, § 18(a). The Pool furthers this goal by equitably redistributing the burden of financing uncompensated acute hospital services among all acute care hospitals ("the hospitals") in the Commonwealth.[5] To make a complex statute simple: section 18 creates a fund, the Pool, in part with periodic assessments against the hospitals' "private sector charges"[6] and in part with other governmental monies and assessments[7]; and then it distributes this fund among the hospitals in proportion to the amount of otherwise-uncompensated care each provides.[8] A hospital's liability to the Pool—that is, the assessment against its private sector charges—is equal to "the product of (1) the ratio of its private sector charges to all acute hospitals' private sector charges; and (2) the private sector liability to the uncompensated care pool as determined by law less [certain surcharges]." G.L. c. 118G, § 18(e). Each hospital's total assessment for a fiscal year is setoff against the Pool's liability to the hospital for uncompensated care during the same period, resulting in either a net liability to the Pool or a net distribution from the Pool. Thus the Pool charges the hospitals' collective private sector revenue to pay for the hospitals' collective burden of uncompensated care, resulting, at bottom, in a net transfer of revenue from those hospitals that provide less uncompensated care (as a proportion of the hospitals' total patient service charges) to those that provide more.

The amounts collected by the Uncompensated Care Pool must be expended for the Pool's own purposes, G.L. c. 118G, § 18(d), and therefore may not be used to fund other governmental programs or to defray the costs of state government.

Section 18 does not provide for an automatic lien to secure payment of amounts owed to the Uncompensated Care Pool. However, it does permit the Division to establish appropriate mechanisms for enforcing a hospital's liability to the Pool, including by offset of payments on the "Title XIX" claims of any hospital.[9] G.L. c. 118G, § 18(g).

**4.** G.L. c. 118G, § 18 was added by St.1996, c. 151, § 275, which repealed and replaced an earlier and substantially identical version of the same law, which was codified at G.L. c. 118F, § 15 (added by St.1988, c.23, § 45). The debt at issue in this case relates to calendar years 1996 through 1999. The Commonwealth cites G.L. c. 118G, § 18 as the basis for the entire amount of its claim, so I conclude that the claim is governed entirely by that ·statute and not by an earlier version of the law.

**5.** See *General Hospital Corp. v. Rate Setting Comm'n*, 407 Mass. 227, 228, 552 N.E.2d 113 (1990), stating, with respect to an earlier version of the Massachusetts Uncompensated Care Pool law, that the purpose of the Pool is "to more equitably distribute the burden of financing uncompensated acute hospital services across all acute hospitals."

**6.** "Private Sector Charges" is defined as gross patient service revenue attributable to all patients less the portion thereof that is attributable to Medicare, Medicaid, other publicly aided patients, free care, and bad debt. G.L. c. 118G, § 1.

**7.** G.L. c. 118G, § '18(d).·

**8.** See G.L. c. 118G, § 18(h) and (k) for the manner in which the Pool's liability to each hospital is to be calculated.

**9.** In G.L. c. 118G, "Title XIX" means Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, entitled "Grants to States for Medical Assistance Programs" and known as Medicaid. G.L. c. 118G, § 1, definition of "Title XIX."

### Discussion: What is an Excise Tax?

■ Section 507(a)(8)(E) of the Bankruptcy Code gives priority to an allowed unsecured claim of a governmental unit to the extent that such claim is for an "excise tax" on certain transactions.[10] Here, the Debtor objects to the priority of the claim on the basis that a debt to the Uncompensated Care Pool is not an "excise tax" within the meaning of § 507(a)(8)(E).[11] In addressing this precise objection in another case, Judge Boroff in this District held that obligations to the Pool are excise taxes and thus entitled to priority status under § 507(a)(8)(E). *In re Ludlow Hospital Society, Inc.*, 216 B.R. 312, 318–320 (Bankr.D.Mass.1997). I agree with his reasoning and conclusion and write further here only to address those of the Debtor's arguments that the *Ludlow Hospital* opinion does not expressly address, including the Debtor's challenges to its reasoning. In doing so, I am mindful that, because priority contravenes the fundamental bankruptcy principle of equality of distribution among creditors, the claimant bears the burden of proving its entitlement to priority, *In re Hemingway Transport, Inc.*, 954 F.2d 1, 4–5 (1st Cir.1992), and that courts construe the priority provisions of the Bankruptcy Code narrowly. *Woods v. City National Bank & Trust Co. of Chicago*, 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820 (1941).[12]

### (i) *Involuntary Pecuniary Burden*

■ In order for an obligation to qualify as a tax, it must, among other things, be an "involuntary" obligation. The Debtor argues that a hospital's liability to the Uncompensated Care Pool is not involuntary because a hospital can regulate its liability to the pool by controlling the amount of free care it provides. The Court disagrees. By this reasoning, the federal income tax would not be a tax because an individual can minimize and even avoid his or her tax liability, such as by earning more or less income (or none at all) and taking advantage of various deductions, exemptions, and credits. Similarly, local real estate taxes would not be taxes because they are assessed against property owners, and home ownership is voluntary. As I have ruled elsewhere, Congress plainly cannot have meant the definition of "tax" to incorporate so expansive a standard of voluntariness; the Debtor's standard would exclude virtually every obligation we know as a tax. *In re Boston Regional Medical Center, Inc.*, 256 B.R. at 220–221. It suffices that, under the statute, a hospital having a net liability to the Pool has no option but to pay it. The

---

**10.** Section 507(a)(8)(E) states:

 (a) The following expenses and claims have priority in the following order: ...

 (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

 (E) an excise tax on—

 (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension after three years before the date of the filing of the petition; or

 (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.

11 U.S.C. § 507(a)(8)(E).

**11.** The Debtor denies only that this type of obligation is an excise tax. The Debtor does not dispute that the transactions from which the obligations arise are of a kind specified in § 507(a)(8)(E)(i) or (ii).

**12.** As for the meaning of tax in § 507(a)(8), I follow the same approach as I set forth in a earlier memorandum of decision in this same case: *In re Boston Regional Medical Center, Inc.*, 256 B.R. 212, at 220 (Bankr.D.Mass. 2000).

obligation at issue is not optional but involuntary.

### (ii) *Primarily for the General Welfare*

 To constitute a tax, an assessment must be levied primarily for the general public welfare, not primarily for the benefit of the obligor. The Debtor argues that the primary beneficiaries of payments to the Uncompensated Care Pool are the hospitals that fund the pool: they benefit by allocating the risk of free care among all acute care hospitals and by creating a source of payment for the free care they provide. Only the hospitals may receive disbursements from the Pool; the public does not share in these funds.

The Court agrees with Judge Boroff that the purpose of this assessment is primarily for the public welfare, not for the benefit of the paying hospital. It is true that the assessment benefits the Commonwealth's acute care hospitals *as a group* by redistributing the burden of free care among them, but it is not true that the assessment benefits the hospital against whom it is levied. A hospital having a net liability to the Pool for any given fiscal year is, by definition, one to whom the Pool will not make a distribution for that year. Funds paid into the Pool do not return to or benefit the payor hospital. Moreover, the Pool's ultimate and intended beneficiaries are the low income uninsured and underinsured residents of the Commonwealth who need free care, especially at hospitals where free care constitutes a disproportionate—and therefore financially threatening—share of the hospital's patient care. The Uncompensated Care Pool assessment essentially taxes private sector revenues in one part of the state's network of acute care hospitals to pay for free care in another. For these reasons, the purpose of this assessment is not private but public in the way that taxes need be.

### (iii) *Universally Applicable to Similarly Situated Entities*

 Another requirement of a tax is that it be universally applicable to similarly situated entities.[13] The Debtor argues that the Uncompensated Care Pool does not apply equally to all similarly situated acute care hospitals because, in various ways, it favors those hospitals for whom free care constitutes a disproportionate share of the hospital's patient care. The flaw in this argument is that hospitals are *not* similarly situated precisely insofar as they have different ratios of private sector charges to free care. Under the statute in question, the assessment varies with this ratio (among other variables). But virtually every tax applies differently to different entities, the amount of the tax being a function of one or more variables, so this characteristic of the obligation is not disqualifying. See *In re Boston Regional Medical Center, Inc.*, 256 B.R. at 224. Under the statute in question, two hospitals having the same financial profiles for a given year will have the same liability to the Pool. That is enough.

### (iv) *Amount Fixed By Statute*

The Debtor next argues that liability to the Uncompensated Care Pool is not a tax

---

**13.** *Suburban Motor Freight, Inc.*, 36 F.3d 484, at 488–489 (6th Cir.1994); *New Jersey v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 284 (1906) (a yearly license fee on corporations was deemed a tax for purposes of priority under the Bankruptcy Act because, among other things, it was imposed on all corporations); *Workers' Compensation Trust Fund v. Saunders*, 234 B.R. at 565 (claim of Commonwealth's Workers' Compensation Trust Fund against estate of uninsured employer for reimbursement of payments made to injured worker was discretionary, not universally applicable and therefore not a tax under § 507(a)(8)).

because its amount is, in part, contingent on the extent of Medicare and Medicaid payments for services that would otherwise qualify as free care. The Pool need not reimburse hospitals for services paid for by Medicare and Medicaid; therefore the level of the assessment needed to fund the reimbursement is contingent on the extent of Medicare and Medicaid payments for otherwise free care. Thus the liability, argues the Debtor, is not fixed by statute and cannot be a tax.

■ In order to qualify as a tax, an assessment must be fixed by statute, but it need not be fixed absolutely. Almost every tax is fixed as a percentage of a variable (such as income, sales price, or property value) or a function of many variables (as with the federal income tax), so the statute need not specify the absolute amount of the tax. Rather, it need only (1) establish that an obligation shall be due in some amount and (2) specify a formula by which the amount can be determined. See *In re Boston Regional Medical Center, Inc.*, 256 B.R. at 224. The statute does these things. The fact that the amount of the tax is contingent on variables is not disqualifying.

### (v) *Statutory Lien*

■ The Debtor argues that the obligation at issue is not a tax because the Uncompensated Care Pool statute does not provide for an automatic lien (such as secures local property taxes in Massachusetts) to secure payment of the obligation, as tax statutes sometimes do. This Court has held that the lack of an automatic lien is not necessarily disqualifying, depending on the nature of the assessment at issue.. See *In re Boston Regional Medical Center, Inc.*, 256 B.R. at 221 n. 5. But I need not determine the disqualifying effect that lack of a lien might have in this instance because this statute *does* give the Division a lien in the form of a right to an offset of payments on the Medicaid claims of any hospital. See G.L. c. 118G, § 18(g).[14]

### (vi) *Effect of Nonpriority Treatment on Policy Goals*

■ The Debtor next argues that the Uncompensated Care Pool obligation should not be deemed a tax because, in essence, the functioning and purposes of the Pool will not be much compromised if the claim is not accorded priority. The Court rejects this argument for two reasons. First, the Uncompensated Care Pool depends on its assessments to achieve its purposes. The fact that it specifies how to deal with shortfalls does not mean that shortfalls have no effect. More importantly, this consideration is simply not germane to determining whether an obligation is a tax. The tax character of the obligation is not dependent on how badly the claimant requires priority classification.

### (vii) *Risk–Sharing Plan Imposed as a Regulatory Fee?*

■ The principal thrust of the Debtor's argument is that the Uncompensated Care Pool is a risk-sharing plan, the liability to which is imposed as a regulatory fee, and, because regulatory fees and taxes are mutually exclusive categories, the obligation is not a tax. In support of this theory, the Debtor relies on two character-

---

14. In relevant part, G.L. c. 118G, § 18(g) provides:
The division shall establish by regulation an appropriate mechanism for enforcing an acute hospital's liability to the pool in the event that an acute hospital does not make a scheduled payment to said pool. Such enforcement mechanism may include notifi-cation to the division of medical assistance requiring an offset of payments on the Title XIX claims of any such acute hospital ... from the division of medical assistance in the amount of payment owed to said pool including any interest and late fees, and to transfer the withheld funds into said pool.

istics of the Pool obligation: (1) that, under Massachusetts regulations, payment of obligations to the Pool is (the Debtor argues) a requirement that acute care hospitals must satisfy to obtain and maintain their hospital licenses; and (2) that the assessments are used only to fund acute care hospitals, not the state government generally or the general public, and thus the assessments secure for the hospitals a kind of benefit that the general public does not share. I will address these in turn.

First, although the cited regulations are unclear as to whether payment of Uncompensated Care Pool obligations is a condition of hospital licensure,[15] this condition would only amount to an enforcement mechanism. When courts distinguish fees from taxes, the fees they have in mind are charges whose purpose is to defray the governmental expense of regulating a particular entity; the fee secures a benefit for that entity alone. Driver's license and automobile registration fees are well known examples. The Debtor does not argue, and could not seriously contend, that the Uncompensated Care Pool assessment serves to pay the cost to the Commonwealth of overseeing and regulating a licensed hospital. Its purpose is wholly different.

Second, while it is true that the assessments are used only to fund acute care hospitals, and that this benefit differs in kind from any that passes through to the general public, the assessment does not thereby become a fee. As I explained above, the assessment does not benefit the payor hospital; rather, it funds payments to *other* hospitals, so the benefit is not private. And the payment directly serves the larger and clearly public purposes of the Uncompensated Care Pool: to help ensure the continued availability of free care to the low-income uninsured and underinsured, and to ensure the financial viability of those hospitals who provide a disproportionate share of that care. The fact that the operative mechanism is a form of "risk sharing plan" does not make the assessment's purpose or function any less public.

For these reasons, I conclude that the Debtor's obligation to the Uncompensated Care Pool is an excise tax, which has priority under § 507(a)(8)(E). A separate order will enter overruling the Debtor's objection to the priority of this claim.

### ORDER ON DEBTOR'S OBJECTION TO CLAIM OF MASSACHUSETTS DIVISION OF HEALTH CARE FINANCE AND POLICY

For the reasons set forth in the separate memorandum of decision issued today, the Court hereby ORDERS as follows:

1. The Debtor's objection to the priority of the claim of the Massachusetts

---

**15.** The Debtor cites the following regulations on hospital licensure:

The Department may refuse to renew, or revoke a license, either wholly or with respect to a specific service or specific services, or a part or parts thereof, for cause. Cause shall include but shall not be limited to the following:

(B) Lack of responsibility and suitability to operate a hospital, as determined pursuant to 105 CMR 130.104; or

. . .

(D) Violation of any state statute pertaining to hospital licensure.

105 CMR 130.130(B) and (D).

(A) In determining whether an applicant is responsible and suitable to be granted a hospital license, the Department shall consider all relevant information including, but not limited to, the following:

(1) The applicant's history of prior compliance with Massachusetts state laws governing health facility operation, and 105 CMR. Assessment of this factor shall include the ability and willingness of the applicant to take corrective action when notified by the Department of regulatory violations; and

105 CMR 130.104(a)(1).

Division of Health Care Finance and Policy under G.L. c. 118G, § 18 (the "Uncompensated Care Pool Claim") is overruled;

2. The Division's Uncompensated Care Pool Claim is ALLOWED as a priority excise tax claim under 11 U.S.C. § 507(a)(8)(e) in the agreed amount of $1,702,714.00;

3. The Division's Compliance Liability Claim is ALLOWED as a nonpriority unsecured claim in the amount of $123,866.00, except that the amount of this portion of the claim will increase to the extent that the Debtor succeeds in avoiding and recovering for the estate under 11 U.S.C. § 547 a prepetition payment on the Compliance Liability debt; and

4. The balance of the Claim of the Massachusetts Division of Health Care Finance and Policy is hereby DISALLOWED.